Jafar Soltani **MOHAJER,** Plaintiff,

v.

**MONIQUE FASHIONS,** Defendant.

**Civil No. 94–2764(HL).**

United States District Court,
D. Puerto Rico.

Oct. 23, 1996.

Carlos S. Latimer, Latimer, Biaggi, Rachid & Godreau, San Juan, PR, for Jafar Soltani–Mohajer.

Carlos A. Rodriguez–Vidal, Goldman, Antonetti & Cordova, San Juan, PR, for Monique Fashions.

### ORDER

LAFFITTE, District Judge.

Before the Court is Defendant Monique Fashions' motion to dismiss this claim for lack of personal jurisdiction. Plaintiff Jafar Soltani Mohajer ("Soltani"), a Puerto Rico resident, brings this action alleging damages under Puerto Rico's Law 75.[1] In his complaint Soltani alleges that he was the exclusive distributor of Monique's clothing products in Puerto Rico; that in 1992 Monique arbitrarily terminated the distributorship without just cause; and that as a result Soltani has suffered severe economic losses. Monique is a California-based corporation. Monique originally filed its motion to dismiss on May 26, 1995. *See* docket no. 3. When Soltani failed to oppose the motion, the Court granted Monique's request and entered judgment dismissing the case. *See* docket nos. 4

& 5. Soltani subsequently moved to vacate the judgment to allow him an opportunity to oppose Monique's motion. The Court granted the motion and on May 23, 1996, a hearing was held on the issues of whether the Court had personal jurisdiction over Monique and whether Soltani's claim was time-barred.

Soltani and Cheryl Beth Heller testified at the hearing. Heller had been a buyer for J.C. Penney in Puerto Rico. She testified that Babak Younesi, the vice president of Monique, personally visited her in 1988; that Younesi told Heller that he was looking for an agent for his company's products in Puerto Rico; that she recommended Soltani to Younesi as a possible agent; and that Younesi called her in 1989 to say that he wanted Soltani to call him because Younesi was ready to engage in distribution in Puerto Rico.[2]

Soltani testified that he spoke with Younesi by phone in 1988 regarding the possibility of Monique's doing business with Soltani in Puerto Rico; that he spoke with Younesi again approximately a year later about the same topic; that Soltani eventually came to carry Monique products in Puerto Rico; that Soltani would do business with Monique by phone; and that Monique had sent him sample products to be exhibited at trade fairs.[3] Soltani also testified that he served as Monique's agent in Puerto Rico.[4] He also presented program books from trade fairs held in Puerto Rico in which Monique's products were displayed, either by Soltani or by the agent that sold Monique's products prior to Soltani.[5] No witnesses testified on behalf of Monique at the hearing, but it did present evidence that it was not a registered corporation in Puerto Rico.[6] Monique's only other evidence is a declaration under penalty of perjury by Younesi in which he declares that Monique does not have a place of business in Puerto Rico; that it does not own real estate or maintain a warehouse in Puerto Rico; that it pays its taxes in California; that it does

1. P.R.Laws Ann. tit. 10, §§ 278–278d (1976 & Supp.1991).

2. Docket no. 20, at 4–7.

3. Docket no. 20, at 8–10, 23–24, 29.

4. Docket no. 20, at 26–27.

5. Exhibits 2, 3, 4, 5.

6. Exhibit A.

not solicit business in Puerto Rico through a local office; and that it does not send agents to Puerto Rico to solicit business.[7] Following the hearing, both parties submitted a memorandum of law on the issue. Monique argues that it does not have sufficient contacts with Puerto Rico to give this Court personal jurisdiction over it. For the reasons set forth below, the Court denies Monique's motion.

## DISCUSSION

### 1. Personal jurisdiction

At the outset, the Court must determine what standard of review should be used in ruling on this issue. When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the court must use a "prima facie" standard. *United Elec. Workers v. 163 Pleasant Street Corp.,* 987 F.2d 39, 43 (1st Cir.1993) *(Pleasant Street II).* Under this standard, the court must accept the plaintiff's properly supported proffers of evidence as true and rule as a matter of law. *Id.* at 44. When, however, the court does hold an evidentiary hearing, one of two other standards applies: either plaintiff must demonstrate by a preponderance of the evidence the facts supporting personal jurisdiction or plaintiff must show a likelihood of the existence of all the facts necessary to establish personal jurisdiction. *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145–47 (1st Cir.1995); *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671, 676–78 (1st Cir.1992). In the case before the Court, Monique argues that the preponderance of the evidence standard should be used. This standard should be used with caution. *Foster–Miller,* 46 F.3d at 146. Soltani did not discuss this issue in its memorandum of law, and it has not contested Monique's assertion that the preponderance of evidence standard should apply. Accordingly, the Court shall apply the preponderance of evidence standard.

The complex issue of personal jurisdiction relates to a court's power over the defendant. There are two types of personal jurisdiction: general and specific. *Pritzker v. Yari,* 42

F.3d 53, 59 (1st Cir.1994). General jurisdiction exists when the lawsuit is not directly based on the defendant's contacts with the forum, but when the defendant has engaged in activity in the forum which is unrelated to the suit and which is systematic and continuous. *Foster–Miller,* 46 F.3d at 144 (quoting *United Elec. Workers v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992) *(Pleasant Street I)).* In the case before the Court, Soltani has not demonstrated that Monique has engaged in continuous and systematic activity in Puerto Rico. Thus, general jurisdiction is lacking.

The second type of personal jurisdiction—specific jurisdiction—requires that the plaintiff establish two conditions: first, that the forum has a long-arm statute which purports to grant jurisdiction over the defendant; and second, that the court's exercise of personal jurisdiction over the defendant pursuant to that statute would comport with the Constitution's strictures. *Foster–Miller,* 46 F.3d at 144. With regard to this first condition, the Puerto Rico long-arm statute provides in pertinent part that a court in Puerto Rico has jurisdiction over a person not domiciled in Puerto Rico if the action arises because that person "[t]ransacted business in Puerto Rico personally or through an agent." P.R.Laws Ann. tit. 32, app. III, R.4.7(a)(1) § (1983). This statute extends personal jurisdiction as far as the United States Constitution will permit. *Pritzker,* 42 F.3d at 60. This statute purports to grant jurisdiction over Monique. Accordingly, the first condition has been met.

The second condition that Soltani must meet requires substantially more analysis. The question of whether Monique transacted business within the meaning of Puerto Rico's long-arm statute depends on whether Soltani can establish that Monique has sufficient minimum contacts with Puerto Rico. *See Pritzker,* 42 F.3d at 60. The following three-part test has been developed for making this determination:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second,

---

7. Docket no. 18, exhibit 1.

the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Id.* at 60–61 (quoting *Pleasant Street I*, 960 F.2d at 1089). This test of the defendant's minimum contacts is "highly idiosyncratic" and must be made on a case-by-case basis. *Id.* at 60.

The first part—the relatedness test—focuses on the nexus between the defendant's contact with the forum and the plaintiff's cause of action. *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 714 (1st Cir.1996); *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir.1995). The relatedness test ensures that the causation element is in the forefront of the court's due process analysis. *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 207 (1st Cir.1994). There should be a proximate cause relation between the defendant's conduct and the plaintiff's claim. *Nowak*, 94 F.3d at 713–15. It should be noted, however, that the proximate cause relation is a "flexible, relaxed standard." *Id.* at 715 (quoting *Sawtelle*, 70 F.3d at 1389 (quoting *Pritzker*, 42 F.3d at 61)) (internal quotations omitted). In the context of a contractual or business relationship which is related to a subsequent tort [8] the absence of proximate cause per se should not automatically lead to the conclusion that the court lacks specific jurisdiction over the defendant. *Id.* at 715. More specifically, when a foreign corporation takes direct action to further its business in a particular forum and is successful in doing so, it may be reasonable to subject that corporation to the forum's jurisdiction if its actions have resulted in a tortious injury. *Id.*

8. Under Law 75, the termination of a dealer without just cause constitutes a tortious act. *See* P.R.Laws Ann. tit. 10, § 278b (1976); *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64, 90, 14 Official Translations 86, 118 (1983).

9. At the hearing, Soltani made much of the fact that Monique's name appeared in the program books for a number of trade shows in Puerto Rico. Soltani failed, however, to show that Mo-

■ In the case before the Court, Soltani presented evidence that Younesi—Monique's vice president—came to Puerto Rico in search of a distributor for Monique's products; that Younesi later called Soltani to discuss the possibility of the latter serving as a distributor in Puerto Rico for Monique; and that Monique sent Soltani sample products to be displayed at trade shows in Puerto Rico. Monique did not present any evidence to contradict this scenario. Soltani's Law 75 claim arose out of the relationship between him and Monique. In turn, this relationship arose out of Monique's actions taken in or directed towards Puerto Rico. The Court finds that Soltani has met his burden to establish that his claim directly arises out of, or relates to, Monique's activities taken in or directed towards Puerto Rico.[9] *See Nowak*, 94 F.3d at 716 (Hong Kong hotel's correspondence to company in Massachusetts soliciting business was sufficient to establish relatedness in claim arising out of the death at the hotel of one of the Massachusetts company's employees); *Redondo Constr. Corp. v. Banco Exterior De España, S.A.*, 11 F.3d 3, 5 (1st Cir.1993) (Spanish bank with an office in Miami sent a vice president to Puerto Rico to solicit plaintiff's business which resulted in plaintiff making payments to the bank; court held that the bank had sufficient involvement in Puerto Rico to make it foreseeable that it might be sued there).

The second part of the test is whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of that forum's laws and making the defendant's involuntary presence before the courts there foreseeable. *Pleasant Street I*, 960 F.2d at 1089). The purposeful availment prong is meant to ensure that personal jurisdiction is not based

nique directly caused its name to appear at the trade shows. It appears more likely that Monique's representative at the time—A. Lugo Associates—published Monique's name in the programs. No evidence was presented to indicate that Monique approved, authorized, or otherwise caused its name to appear in these books. Accordingly, the Court gives little weight to this evidence.

only upon a defendant's random or isolated contacts with the forum. *Sawtelle*, 70 F.3d at 1391. The court's exercise of jurisdiction must be "fair, just, or reasonable." *Nowak*, 94 F.3d at 716 (quoting *Sawtelle*, 70 F.3d at 1391 (quoting *Rush v. Savchuk*, 444 U.S. 320, 329, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980))) (internal quotations omitted). The Court should focus on voluntariness and foreseeability. *Id.* at 716. The defendant's contacts with the forum should be voluntary and not based on the unilateral actions of a third party. *Id.* Additionally, the nature of these contacts must be such that defendant could reasonably anticipate the possibility of being subject to a lawsuit there. *Id.*

In the present case, the Court finds that Monique's activities that were discussed above—the visit to Puerto Rico in search of a distributor, the call to Soltani to discuss his handling Monique's products, and the shipment of samples to Soltani for trade shows—are equally persuasive in satisfying the purposeful availment prong. It appears that all these actions were voluntary. Additionally, Soltani testified that he carried Monique's products in Puerto Rico. Based on all of this evidence, it should have been foreseeable to Monique that its business relation with Soltani could eventually lead to a lawsuit against it in Puerto Rico. It is appropriate to exercise jurisdiction over a defendant that has purposefully derived economic benefits from the forum. *Id.* at 717. Accordingly, the Court finds that Soltani has met his burden of showing that Monique's Puerto Rico contacts represent a purposeful availment of the privilege of conducting business here, thereby invoking the benefits and protections of Puerto Rico's laws and making Monique's presence as a defendant in Puerto Rico's courts foreseeable.

█ The third part of the test requires the plaintiff to demonstrate that the exercise of the court's jurisdiction would be reasonable in light of the gestalt factors. *Pleasant Street I*, 960 F.2d at 1089. The gestalt factors are made up of the following five criteria:

 (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Id.* at 1088. These factors serve to assist the court in achieving substantial justice. *Ticketmaster*, 26 F.3d at 209. In a close case, they can tip the constitutional balance of the court's analysis. *Id.*

█ The first factor—the burden on the defendant to appear in the forum—permits the court to prevent harassing litigation. *Nowak*, 94 F.3d at 718. It will almost always be burdensome for a defendant to defend itself in a foreign jurisdiction. *Pritzker*, 42 F.3d at 64. In order for this factor to weigh against the court's jurisdiction, therefore, it must be shown that the exercise of jurisdiction is "onerous in a special, unusual, or other constitutionally significant way." *Id.* In the case before the Court, it will be burdensome and inconvenient for Monique to defend this case in Puerto Rico. The Court notes, however, that it would be burdensome and inconvenient for Monique or *any other* defendant based outside of Puerto Rico to defend a suit in this forum. Monique has not demonstrated any unique or special circumstances to show that the burden on it to appear in Puerto Rico would be constitutionally significant. Additionally, there is no evidence to indicate that this lawsuit was instigated to harass Monique. Accordingly, this factor weighs in favor of the court's exercise of jurisdiction.

█ The second factor examines the forum's interest in adjudicating the dispute. *Pleasant Street I*, 960 F.2d at 1088. The purpose of this factor is not to compare the forum's interest with that of another jurisdiction, but to measure the extent to which the forum has an interest at all. *Foster–Miller*, 46 F.3d at 151. A forum state has a demonstrable interest in exercising jurisdiction over a defendant who has caused a tortious injury within the state. *Sawtelle*, 70 F.3d at 1395. In the case before the Court, the alleged tortious act of arbitrarily terminating the parties' relationship occurred outside of Puerto Rico. The effects of this alleged ter-

mination, however, were felt by Soltani in Puerto Rico. Therefore, Puerto Rico has an interest in exercising jurisdiction over Monique.

■ The third gestalt factor is the plaintiff's interest in obtaining effective and convenient relief. *Pleasant Street I,* 960 F.2d at 1088. The plaintiff's choice of a forum should be given a large degree of deference with regard to the issue of his own convenience. *Sawtelle,* 70 F.3d at 1395. In the case before the Court, Soltani is a Puerto Rico resident and he has chosen to litigate his claim here. It would certainly be more convenient for him to litigate his claim here in Puerto Rico. Thus, this factor weighs in favor of the Court's exercising jurisdiction over Monique.

■ The fourth factor is the judicial system's interest in obtaining the most efficient resolution of the controversy. *Pleasant Street I,* 960 F.2d at 1088. Monique claims that the physical evidence and a majority of the witnesses are in California. Soltani has not expressly addressed this issue in his memorandum of law. In an earlier motion, however, Soltani stated that the witnesses to the alleged tortious acts are in Puerto Rico.[10] At the hearing, Soltani did testify at the hearing that he stored Monique products at a warehouse in Puerto Rico, that he advertised Monique products in Puerto Rico and that Monique's products were shown at trade shows in Puerto Rico.[11] Thus, there should be physical evidence in Puerto Rico. Additionally, at least one witness—Soltani—is in Puerto Rico. This does not appear to be a complex case with large numbers of witnesses and great quantities of documentary evidence. There are witnesses in both California and Puerto Rico, and there is physical evidence in both places. It does not appear that substantially more witnesses or evidence are located in either California or Puerto Rico. Accordingly, this factor does not favor either side in the determination of whether the Court should exercise jurisdiction. *See Sawtelle,* 70 F.3d at 1395.

■ The final gestalt factor is the common interests of all involved sovereigns in promoting substantive social policies. *Pleasant Street I,* 960 F.2d at 1088. A prominent policy consideration for this factor is the state's ability to provide its residents with a convenient forum to redress injuries caused by foreign actors. *Sawtelle,* 70 F.3d at 1395. In the case before the Court, Puerto Rico has the policy interest of affording Soltani with a forum to bring his Puerto Rico law claims against Monique. Monique has presented no policy interest that California might have in having this dispute resolved there. Because Puerto Rico has a strong policy interest in having this case heard here and because Monique has adduced no policy to favor hearing the case in California, this factor favors exercising jurisdiction over Monique in Puerto Rico. Even if California had a policy interest in not having its residents be forced to defend against law suits brought in distant fora such as Puerto Rico, however, that would only make this factor favor neither Monique nor Soltani. In any case, this factor would not favor Monique's position.

■ In conclusion, three of the gestalt factors clearly favor this Court's exercising jurisdiction over Monique. One of the factors favors neither side, and the fifth factor favors either Soltani's position or neither side. As a whole, the gestalt factors weigh in favor of having this Court exercise jurisdiction over Monique. Additionally, the purposeful availment and relatedness tests also favor exercising jurisdiction over Monique. Accordingly, the Court hereby denies Monique's motion to dismiss for lack of personal jurisdiction.

## 2. *Statute of limitations*

The Court's hearing of May 23, 1996, was also held to address Monique's argument that Soltani's claim was time-barred. On the statute of limitations issue, the Court will not apply the preponderance-of-the-evidence standard that it used in resolving the personal jurisdiction issue. The summary judgment standard may be used in ruling on a statute of limitations issue. *Rivera–Mu-*

---

**10.** Docket no. 6, at 6.

**11.** Docket no. 20, at 23, 26, 28, 37.

**30**

*riente v. Agosto–Alicea,* 959 F.2d 349, 352 (1st Cir.1992). The Court shall apply that standard to the issue of whether Soltani's claim is timely. Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The limitation period for filing a Law 75 claim is three years "from the date of the definite termination of the dealer's contract." P.R.Laws Ann. tit. 10, § 278d.

 Soltani filed his complaint on December 30, 1994. Thus, his claim is timely filed if the definite termination of his relationship with Monique occurred after December 30, 1991. Soltani testified at the hearing that the last time he received goods from Monique was at the end of November 1991. *See* docket no. 20, at 33. Soltani also testified, however, that his last purchase order to Monique was in November 1991; that Monique had requested an extension until January 1992 to fill the order; that Soltani had expected the order to be filled in January 1992; but that Monique never completed the order. *See id.* at 33–34, 42. The exact nature of the parties' business relationship has not been fully developed in the record. Thus, it is unclear as to whether the parties' relationship was definitely terminated when Soltani last received goods from Monique in November 1991 or when Soltani failed to receive goods in January 1992. Accordingly, there is a genuine issue of material fact as to whether Soltani's claim is time-barred, and the Court denies without prejudice to renew Monique's motion to dismiss on these grounds. At trial Monique may revisit this issue, and the fact finder will determine the date that the parties' relationship was terminated.

WHEREFORE, the Court hereby denies Monique's motion to dismiss this claim. The Court hereby orders Monique to file an answer by November 15, 1996.

**IT IS SO ORDERED.**