Rosa Torres CALDERON,
et al., Plaintiffs,

v.

ERKILETIAN CONSTRUCTION
CORP., et al. Defendants.

Civil No. 96–2051(SEC).

United States District Court,
D. Puerto Rico.

Dec. 10, 1996.

Juan A. Ramón–Díaz, San Juan, PR, for Plaintiffs.

Alfonso Miranda–Cardenas, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court are the motions to dismiss filed by defendants Techworld Hotel Associates and Hartford Insurance Group (**Docket # 2, 6**). Upon careful consideration of the parties' arguments and the applicable law, defendants' motion to dismiss are **GRANTED**.

### Factual Background

On August 28, 1996, plaintiffs Rosa Torres Calderón, Andres Calderón and their son Andres Javier Torres Calderón filed the present action against defendants Techworld

Associates ("Techworld"), Erkiletian Construction Corporation (Erkiletian), Ramada Hotel Operating Co., the Hartford Insurance Group and other insurance companies. None of these entities are residents of Puerto Rico.

The facts, as alleged by plaintiffs, are as follows: Techworld and Erkiletian on or about January 11, 1995, subscribed a cost plus construction agreement to perform certain demolition, construction and remodeling work at the Renaissance Hotel, located in Washington, D.C. Hartford provided insurance coverage at the time of the occurrence to Techworld and Ramada. According to plaintiffs, Erkiletian negligently left exposed objects while undertaking the remodeling of an area known as the Chinese Garden at the Ramada Renaissance Hotel. These obstructions caused plaintiff Rosa Torres Calderón to fall and sustain a fractured patella and swollen knee, which required extensive rehabilitation therapy. She also suffered traumas to her shoulders, lumbar area, left hand and face, which led to her permanent disability.

Her continuing medical problems and the concomitant adjustments in her personal and professional life have caused her great mental pain and suffering, as well as to her husband and her son. On September 30, 1996, defendants filed the present motion to dismiss, alleging lack of personal jurisdiction due to the lack of minimum contacts. On October 21, 1996, plaintiffs filed their opposition. Having reviewed the proper documentation, we proceed to decide.

### Applicable Law/Analysis

The complex issue of personal jurisdiction relates to a court's power over the defendant. There are two types of personal jurisdiction: general and specific.[1] *Pritzker v. Yari*, 42 F.3d 53, 59 (1st Cir.1994). General jurisdiction exists when the lawsuit is not directly based on the defendant's contacts with the forum, but when the defendant has engaged in activity in the forum which is unrelated to the suit and which is systematic and continuous. *Foster–Miller, Inc. v. Bab-*

---

1. This district court has recently issued a cogent and thoughtful opinion on the topic of personal jurisdiction, which merits mentioning. *Jafar Sol-*

*tani Mohajer v. Monique Fashions*, 945 F.Supp. 23 (D. Puerto Rico 1996) (Laffitte, J.).

cock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir.1995) (quoting *United Elec. Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1088 (1st Cir.1992) (*Pleasant Street I* )). Whenever defendants challenge the Court's in personam jurisdiction, the plaintiff bears the burden of proving that jurisdiction lies in the forum state. *Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir.1995). In the case before the Court, plaintiffs have not demonstrated that any of the defendants have engaged in continuous and systematic activity in Puerto Rico. Thus, general jurisdiction is lacking.

The courts usually employ a three-prong test to determine the existence of the other type of jurisdiction, specific personal jurisdiction:

■ First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable. *Foster–Miller*, 46 F.3d at 144 (quoting *Pleasant Street I*, 960 F.2d at 1089). This test of the defendant's minimum contacts is "highly idiosyncratic" and must be made on a case-by-case basis. *Pritzker*, 42 F.3d at 60.

■ Even while considering all of plaintiffs' assertions as true, this Court cannot discern any set of facts pleaded by plaintiffs sufficient to conclude that their claim directly arose out of, or related to, the defendants' forum-state activities. Neither is there any evidence to make a colorable claim that the defendants purposefully availed themselves of the privilege of conducting activities in the forum state, thereby invoking the benefits

and protections of that state's laws and making the defendants' involuntary presence before the state's courts foreseeable. It is well-settled law that plaintiffs have the burden to establish personal jurisdiction. *United Electrical Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1090. However, in their opposition to defendants' motion to dismiss, they only state the following:

"Co-defendant goes on to state they had 'no reasonable anticipation of being sued in Puerto Rico' ... yet they own one of the most prestigious hotels in our nation's capital; they surely must anticipate that it will be visited by individuals outside of the capital Beltway, such as those from Puerto Rico." (Plaintiffs' Opposition, Docket # 4, p. 2–3)

Such conclusory assertions are not enough to establish personal jurisdiction. Plaintiffs completely omit any discussion of minimum contacts, as delineated by the First Circuit in a plethora of cases, or discusses any of the factors delineated by Puerto Rico's long-arm statute.

The second type of personal jurisdiction—specific jurisdiction—requires that the plaintiff establish two conditions: first, that the forum has a long-arm statute which purports to grant jurisdiction over the defendant; and second, that the court's exercise of personal jurisdiction over the defendant pursuant to that statute would comport with the parameters outlined by the Constitution. *Foster–Miller Inc.*, 46 F.3d at 144. With regard to this first condition, the Puerto Rico long-arm statute provides in pertinent part that a court in Puerto Rico may exercise personal jurisdiction over a non-resident defendant if the action or claim arises because said person (1) transacted business in Puerto Rico personally or through an agent; or (2) participated in tortious acts within Puerto Rico personally or through his agent;[2] P.R.Laws Ann. Tit. 32, App. III, Rule 4.7(a). Upon

---

**2.** The other three factors, which are not applicable to the present case, are whether the party:

(3) was involved in an automobile accident while driving a motor vehicle in Puerto Rico personally or through his agent; or

4) was involved in an accident in Puerto Rico while operating, personally or through his agent,

a freight or passenger transportation business in Puerto Rico, between Puerto Rico and the United States or between Puerto Rico and a foreign country, or if, in the operation of said business, an accident occurs outside Puerto Rico and the contract had been executed in Puerto Rico; or (5) owns, uses or possesses, personally or through his agent, real property in Puerto Rico.

careful review of plaintiffs' allegations, the Court concludes that plaintiffs have failed to demonstrate that defendants' activities fall within the purview of either requisite to justify the exercise of personal jurisdiction over them.

Although they do not cite it, plaintiffs might have argued that the First Circuit's recent decision in *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708 (1st Cir.1996) is analogous to the case at hand. Upon careful scrutiny of the Court's holding in that case, we may clearly distinguish the noted case from our present controversy. In *Tak How*, a Massachusetts resident who accompanied her husband on a business trip to Hong Kong drowned in their hotel's swimming pool. Plaintiffs later brought a wrongful death diversity action against the Hong Kong corporation that owned the hotel, a corporation with no place of business outside of Hong Kong. The Circuit Court found, *inter alia:* 1) that defendants' contacts were sufficiently related to the tort action to justify the assertion of specific personal jurisdiction; and 2) the solicitation in Massachusetts by a foreign hotel owner constituted purposeful availment to make exercise of personal jurisdiction reasonable in Massachusetts.

In *Tak How*, the Court determined that the Hotel engaged in substantial business activities which amply justified the exercise of personal jurisdiction over them:

> Whether prompted or unprompted, Tak How's on-going correspondence with Kiddie Products, designed to bring Massachusetts residents into Hong Kong, rendered foreseeable the possibility of being haled into a Massachusetts Court ... its other contacts with Massachusetts reveal an even more substantial attempt by Tak How to purposefully avail itself of the privilege of conducting business activities in the state: Tak How advertised its hotel in national and international publications that circulated in Massachusetts; it solicited by direct mail some of its previous guests residing in Massachusetts; and Tak How listed its hotel in various hotel guides used at travel agencies in Massachusetts. Exercising jurisdiction is appropriate where the defendant purposefully derives eco-

nomic benefits from its forum-state activities. *Pritzker*, 42 F.3d at 61–62 (citing *Burger King [v. Rudzewicz]*, 471 U.S. [462] at 476, 105 S.Ct. [2174] at 2184 [85 L.Ed.2d 528 (1985) ] ).

*Tak How*, 94 F.3d at 717.

Plaintiffs do not proffer a scintilla of evidence to support their claim of personal jurisdiction over defendants. Plaintiffs do not assert that they received travel brochures advertising the hotel. They do not assert that the hotel has engaged in business activities within Puerto Rico. They do not assert that defendants committed a tortious act in Puerto Rico. The only mention of minimum contacts, as noted above, is a conclusory statement that defendants are a prestigious hotel who should foresee potential lawsuits from foreign travelers who are victims of the hotel's negligence. Plaintiffs may not rely on such gossamer piece of evidence.

Although plaintiffs' showing of minimum contacts is virtually non-existent, our inquiry does not stop here. Assuming *arguendo,* that plaintiffs had established sufficient minimum contacts from defendants, the Court must heed the Supreme Court's oft-quoted litmus test to assert jurisdiction that is, that defendants must have sufficient minimum contacts so that the forum's exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). In order to properly answer that question, Courts have devised several "gestalt" factors:

> 1) the defendant's burden of appearing, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most effective resolution of the controversy, and 5) the common interests of all sovereigns in promoting substantive social policies. *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184.

*Tak How*, 94 F.3d at 717.

The purpose of the gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts

question is very close. In such cases, the gestalt factors may tip the constitutional balance. *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 209 (1st Cir.1994). Accordingly, the First Circuit Court has adopted a sliding scale approach: "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* at 210. Conversely, "an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." *Id.* (Citing *Donatelli v. National Hockey League,* 893 F.2d 459, 465 (1st Cir.1990)).

Given the present scenario, plaintiffs have failed to prove that defendants' contacts with Puerto Rico, if any, were related to plaintiffs' cause of action. Furthermore, the Court does not discern any purposeful availment of the privilege of conducting activities in the forum state. With this in mind, defendants argument that exercise of personal jurisdiction is unreasonable seems more compelling. We discuss the gestalt factors.

### Burden of Appearance

The first factor—the burden on the defendants to appear in the forum—permits the court to prevent harassing litigation. *Nowak,* 94 F.3d at 718. It will almost always be burdensome for a defendant to defend itself in a foreign jurisdiction. *Pritzker,* 42 F.3d at 64. In order for this factor to weigh against the court's jurisdiction, therefore, it must be shown that the exercise of jurisdiction is "onerous in a special, unusual, or other constitutionally significant way." *Id.* In the case before the Court, it will be burdensome and inconvenient for defendants in Puerto Rico. The Court notes, however, that it would be burdensome and inconvenient for *any other* defendants based outside of Puerto Rico to defend a suit in this forum. We acknowledge that all the defendants reside in either Washington, D.C. or Virginia. The accident occurred there and they do not have any agents in Puerto Rico. On the other hand, there is no evidence that the lawsuit was filed to harass defendants, and plaintiffs may have a colorable claim. Since there are no unusual circumstances that would create

severe prejudice pursuant to the exercise of personal jurisdiction over defendants, this factor weighs slightly in favor of the court's exercise of jurisdiction.

### Interest of the Forum

The second factor examines the forum's interest in adjudicating the dispute. *Pleasant Street I,* 960 F.2d at 1088. The purpose of this factor is not to compare the forum's interest with that of another jurisdiction, but to measure the extent to which the forum has an interest at all. *Foster–Miller,* 46 F.3d at 151. A forum state has a demonstrable interest in exercising jurisdiction over a defendant who has caused a tortious injury within the state. *Sawtelle,* 70 F.3d at 1395. In the case before the Court, the alleged tortious act in which plaintiffs suffered injuries occurred outside of Puerto Rico. Although plaintiffs continued to suffer the effects of the tortious act once in Puerto Rico, this factor tilts against the exercise of personal jurisdiction.

### The Plaintiffs' Convenience

The third gestalt factor is the plaintiff's interest in obtaining effective and convenient relief. *Pleasant Street I,* 960 F.2d at 1088. The plaintiffs' choice of a forum should be given a large degree of deference with regard to the issue of their own convenience. *Sawtelle,* 70 F.3d at 1395. In the present case, plaintiffs are Puerto Rico residents and they have chosen to litigate their claim here. It would certainly be more convenient for them to litigate their claim here in Puerto Rico. Thus, this factor weighs in favor of the Court's exercising jurisdiction over defendants.

### The Administration of Justice

The fourth factor is the judicial system's interest in obtaining the most efficient resolution of the controversy. *Pleasant Street I,* 960 F.2d at 1088. All defendants are located in either Washington, D.C. or Virginia. The tortious act occurred in Washington, D.C. Although some of the key witness are in Puerto Rico, this Court cannot discern how many defense witnesses would be readily available to testify in Puerto Rico. Finally, there is nothing in the record to suggest that the Courts of Washington, D.C. or Virginia

**48**

could not act in a fair, impartial and efficient manner in the processing of this case. In *Tak How*, the Court expressed grave concern over Hong Kong's political instability and the undue burden on plaintiffs in obtaining transportation and interpreters were the case to be tried in Hong Kong. There are no similar concerns here. Accordingly, this factor counsels against the exercise of jurisdiction. *See Sawtelle*, 70 F.3d at 1395.

### Pertinent Policy Arguments

The final gestalt factor is the common interests of all involved sovereigns in promoting substantive social policies. *Pleasant Street I*, 960 F.2d at 1088. A prominent policy consideration for this factor is the state's ability to provide its residents with a convenient forum to redress injuries caused by foreign actors. *Sawtelle*, 70 F.3d at 1395.

In the case before the Court, Puerto Rico has the policy interest of affording plaintiffs with a forum to bring his Puerto Rico law claims against defendants. However, defendants also have a strong policy interest in resolving the present dispute in the Washington, D.C. courts, since the accident occurred in Washington; moreover, the defendants have an interest in protecting visitors to promote and preserve its tourism industry and protecting their own business. This factor does not counsel strongly against either of the parties.

Having considered all the gestalt factors, defendants have made a strong showing that exercise of personal jurisdiction is unreasonable. In view of the fact that the purposeful availment and relatedness tests counsel against the exercise of jurisdiction over defendants, the analysis of the gestalt factors, taken as a whole, indicate that exercise of personal jurisdiction over defendant is unreasonable. The Court notes that in their opposition, plaintiffs glossed over the issue of personal jurisdiction and dove headlong into the doctrine of *forum non conveniens*. In doing so, plaintiffs placed the cart before the horse. Plaintiffs may not argue that their chosen forum is the most convenient forum if they have previously failed to establish that the forum is legally entitled to exercise jurisdiction over the defendants. Since we have already decided that plaintiffs have failed to

meet their burden of establishing personal jurisdiction over defendants, we need not decide the issue of *forum non conveniens*.

Pursuant to the above discussion, defendants' motions to dismiss are hereby **GRANTED.** (Docket # 2, 6) Judgment shall follow accordingly.

**SO ORDERED.**